No. 16-15478

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SATICOY BAY LLC SERIES 2714 SNAPDRAGON,

                Plaintiff - Appellant,

vs.

FLAGSTAR BANK, FSB,

                  Defendant - Appellee.

On Appeal from the U.S. District Court for Nevada
2:13-cv-01589-JCM-VCF, the Honorable James C. Mahan

**APPELLANT'S OPENING BRIEF**

Michael F. Bohn, Esq.
Nevada Bar No. 1641
mbohn@bohnlawfirm.com
LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Telephone: (702) 642-3113
Facsimile: (702) 642-9766

Attorney for plaintiff/appellant

**FRAP 26.1 DISCLOSURE**

Counsel for plaintiff/appellant states that plaintiff/appellant, Saticoy Bay LLC Series 2714 Snapdragon, is a Nevada limited-liability company.

The manager for Saticoy Bay LLC Series 2714 Snapdragon is the Bay Harbor Trust.

The trustee for the Bay Harbor Trust is Iyad Haddad a/k/a Eddie Haddad.

No publicly held corporation owns 10% or more of either Saticoy Bay LLC Series 2714 Snapdragon or the Bay Harbor Trust.

ii

# TABLE OF CONTENTS

FRAP 26.1 DISCLOSURE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

    Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

    Statutes and rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

    Other authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

I.    JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.  SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.    Defendant's deed of trust was extinguished by the foreclosure
        sale held on May 17, 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.    The provisions of 12 U.S.C. § 4617(j)(3) did not prevent the
        deed of trust assigned to defendant from being extinguished
        because Fannie Mae did not hold a recorded interest in the
        Property on the sale date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.    Because plaintiff is a bona fide purchaser, any unrecorded
        interest in the Property held by Fannie Mae is void as to
        plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    4.    The provisions of 12 U.S.C. § 4617(j)(3) do not apply to the
        nonjudicial foreclosure of an HOA lien by a private party. . . . . . . 17

    5.    Defendant did not produce any admissible evidence that the
        underlying note was ever legally transferred to Fannie Mae. . . . . . 20

    6.    Defendant did not produce any admissible evidence that its
        deed of trust was federally insured. . . . . . . . . . . . . . . . . . . . . . . 21

    7.    Defendant did not have prudential standing to make arguments
        based on rights belonging to FHFA. . . . . . . . . . . . . . . . . . . . . . . 22

8. The foreclosure process in NRS Chapter 116 does not violate due process because no "state actor" participates and because the statute requires that copies of the notice of default and the notice of sale be mailed to holders of "subordinate" interests...... 24

9. The extinguishment of defendant's deed of trust does not violate the takings clauses in the United States Constitution and the Nevada Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

10. The HOA foreclosure statute does not violate public policy....... 32

11. An HOA foreclosure sale is not required to be "commercially" reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VIII. CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . 34

IX. STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . 35

X. CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

<u>CASES:</u>

**<u>Federal Cases</u>**

<u>Allen v. Wright</u>, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). . . . . . . . 23

<u>Apao v. Bank of New York</u>, 324 F.3d 1091 (9th Cir. 2003). . . . . . . . . . . . . . . . 25

<u>Armstrong v. Exceptional Child Center, Inc.</u>,

    575 U.S. ___ , 135 S. Ct. 1378 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

<u>Armstrong v. United States</u>, 364 U.S. 40 (1960). . . . . . . . . . . . . . . . . . . . . . . . 31

<u>Black v. TIC Investment Corp.</u>, 900 F.2d 112 (7th Cir. 1990). . . . . . . . . . . . . . . 7

<u>Butner v. United States</u>, 440 U.S. 48 (1979). . . . . . . . . . . . . . . . . . . . . . . 7-8, 16

<u>Charmicor, Inc. v. Deaner</u>, 572 F.2d 694 (9th Cir. 1978). . . . . . . . . . . . . . . . . . 25

<u>Crandon v. United States</u>, 494 U.S. 152, 110 S. Ct. 897 (1990). . . . . . . . . . . . . 17

iv

FDIC v. McFarland, 243 F.3d 876 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 19

FDIC v. New Hampshire Insurance Co., 953 F.2d 478 (9th Cir. 1991). . . . . . . . . 4

Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . 25

Freedom Mortgage Corp. v. Las Vegas Development Group, LLC,

    106 F. Supp. 3d 1174 (D. Nev. 2015). . . . . . . . . . . . . . . . . . . . . 21, 22, 23, 24

Kmart Corp. v. Cartier, Inc., 486 U.S. 281, 108 S. Ct. 1811 (1988). . . . . . . . . . . 17

Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935). . . . . . . . . . . 31

Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922 (1982). . . . . . . . . . . . . . . . . . . . 25

Melara v. Kennedy, 541 F.2d 802 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . 25-26

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983). . . . . . . . . . . . . . 26, 29

In re Mortgage Electronic Registration Systems, Inc.,

    754 F.3d 772 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). . . . . . . . . . 29

Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 7

Robinson v. Shell Oil Co., 519 U.S. 337, 117 S. Ct. 843 (1997). . . . . . . . . . . . . . 17

Rust v. Johnson, 597 F.2d 174 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.,

    979 F. Supp. 2d 1142 (D. Nev. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Skylights LLC v. Byron, 112 F. Supp. 3d 1145 (D. Nev. 2015). . . . . . . . . . . 11, 22

Tulsa Prof'l Collection Servs., Inc. v.Pope, 485 U.S. 478 (1988). . . . . . . . . . . . . 29

United States v. Lazarenko, 476 F.3d 642 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . 23

United States v. Security Industrial Bank, 459 U.S. 10 (1982). . . . . . . . . . . . . . . 31

United States v. Stadium Apartments, Inc., 425 F.2d 358 (9th Cir. 1970). . . . . . . 14

v

United States v. Victory Highway Village, Inc.,

    662 F.2d 488 (8th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

United States v. View Crest Garden Apts., Inc.,

    268 F.2d 380 (9th Cir. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 16

Valle del Sol Inc. v. Whiting, 732 F.3d 1006 (9th Cir. 2013). . . . . . . 15-16, 17, 20

Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). . . . . . . . . 23

The Wilderness Soc'y v. Kane Cnty., Utah, 632 F.3d 1162 (10th Cir. 2011). . . . 23

**State Cases**

Allison Steel Manufacturing Co. v. Bentonite, Inc.,

    86 Nev. 494, 471 P.2d 666 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246 (1979). . . . . . . . . . . . . . . . . . 15

Board of County Comm'rs v. CMC of Nevada,

    99 Nev. 739, 670 P.2d 102 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-30

Brunzell v. Woodbury, 85 Nev. 29, 449 P.2d 158 (1969). . . . . . . . . . . . . . . . . . 33

Buhecker v. R.B. Petersen & Sons Const. Co., Inc.,

    112 Nev. 1498, 929 P.2d 937 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

City Council of Reno v. Reno Newspapers,

    105 Nev. 886, 784 P.2d 974 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Edelstein v. Bank of New York Mellon,

    128 Nev., Adv. Op. 48, 285 P.3d 249 (2012). . . . . . . . . . . . . . . . . . 9, 10, 11

Foley v. Kennedy, 110 Nev. 1295, 885 P.2d 583 (1994). . . . . . . . . . . . . . . . . . 29

Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963). . . . . . . . . . . . . . . . 32, 33

Holland v. Pendleton Mortg. Co., 61 Cal. App. 2d 570, 143 P.2d 493 (1943). . . . 6

Levers v. Rio King Land & Investment Co.,

    93 Nev. 95, 560 P.2d 917 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Leyva v. National Default Servicing Corp.,

    127 Nev. 3, 255 P.3d 1275 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 20

Long v. Towne, 98 Nev. 11, 639 P.2d 528 (1982). . . . . . . . . . . . . . . . . . . . . . 33

Oller v. Sonoma County Land Title Company,

    137 Cal. App. 2d 633, 290 P.2d 880 (1955). . . . . . . . . . . . . . . . . . . . . . . 32

Public Employees' Benefits Program v. Las Vegas Metropolitan Police

    Department, 124 Nev. 138, 179 P.3d 542 (2008). . . . . . . . . . . . . . . . . . . . 30

Sereika v. State, 114 Nev. 142, 955 P.2d 175 (1998). . . . . . . . . . . . . . . . . . . . 29

SFR Investments Pool 1, LLC v. U.S. Bank, N.A.,

    130 Nev., Adv. Op. 75, 334 P.3d 408 (2014). . . . . . . . . . . 5, 6, 26-27, 31, 32

Shadow Wood Homeowners Association, Inc. v. New York Community

    Bancorp, Inc., 132 Nev. Adv. Op. 5, 366 P.3d 1105 (2016). . . . . . . . . . 6, 33

Sheriff v. Wu, 101 Nev. 687, 708 P.2d 305 (1985). . . . . . . . . . . . . . . . . . . . . . 29

Southern Nevada Homebuilders v. Clark County ,

    121 Nev. 446, 117 P.3d 171 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

State v. Steven Daniel P. (In re Steven Daniel P.),

    129 Nev., Adv. Op. 73, 309 P.3d 1041(2013). . . . . . . . . . . . . . . . . . . . . . 27

Turner v. Dewco Services, Inc., 87 Nev. 14, 479 P.2d 462 (1971). . . . . . . . . . . 33

25 Corp. v. Eisenman Chemical Co., 101 Nev. 664, 709 P.2d 164 (1985). . . . . 15

Whitehead v. Nevada Commission on Judicial Discipline,

    110 Nev. 380, 878 P.2d 913 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

vii

**STATUTES AND RULES**:

**Federal Statutes**

24 C.F.R. § 203.315.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

11 U.S.C. § 522.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

12 U.S.C. § 1825.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

12 U.S.C. § 4502.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12 U.S.C. § 4617.. . . . . . . . . . . . . . . . . . . . . 1, 3, 6, 11, 15, 16, 17, 18, 19, 22

28 U.S.C. § 1295.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1332.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Bankruptcy Act § 75.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Bankruptcy Reform Act of 1978.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**State Statutes**

California Commercial Code § 7210. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

NRS 104.3201.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

NRS 104.3203.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

NRS 104.3204.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

NRS 104.9109.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

NRS 104.9504.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

NRS 104.9610.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

NRS 106.210.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

NRS 107.070.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NRS 107.090.. . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 25, 26, 27, 28, 29, 30

NRS 111.180.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

NRS 111.205. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

NRS 111.315. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

NRS 111.325. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

NRS 116.3116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4-5

NRS 116.31162. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

NRS 116.31166. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

NRS 116.31168. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 25, 26, 28, 29, 30

**Federal Rules**

Fed. R. Civ. P. 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**OTHER AUTHORITIES:**

Nevada Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 30-31

Uniform Commercial Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 33

Uniform Common Interest Ownership Act (1982). . . . . . . . . . . . . . . . . . . . . 32

United States Constitution.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 30-31

# I. JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332. The district court granted summary judgment in favor of Flagstar Bank, FSB (hereinafter "defendant"). This court has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1295(a)(1).

# II. ISSUES PRESENTED

1. Whether the HOA foreclosure sale held on May 17, 2013 extinguished defendant's deed of trust .

2. Whether 12 U.S.C. § 4617(j)(3) prevented defendant's deed of trust from being extinguished.

3. Whether defendant's claim that its deed of trust was federally insured prevented defendant's deed of trust from being extinguished.

4. Whether defendant had prudential standing to make arguments based on rights belonging to FHFA, Fannie Mae, FHA, or HUD.

5. Whether Nevada's HOA foreclosure statute is unconstitutional on its face and violates due process rights of "subordinate" lien holders.

6. Whether Nevada's HOA foreclosure statute violates the takings clauses of the United States and Nevada Constitutions.

7. Whether extinguishment of defendant's deed of trust would violate public policy.

8. Whether an HOA foreclosure sale must be commercially reasonable.

# III. STATEMENT OF THE CASE

Saticoy Bay LLC Series 2714 Snapdragon (hereinafter "plaintiff") obtained title to the real property located at 2714 Snapdragon Court, Henderson, Nevada (hereinafter "Property") at a public auction held on May 17, 2013 on behalf of Eastbridge Gardens Condominiums (hereinafter "HOA") pursuant to NRS 116.31162 to 116.31168, and by incorporation, NRS 107.090.

On August 2, 2011, Nevada Association Services, Inc. (hereinafter "NAS"), as

1

agent for the HOA, recorded a notice of delinquent assessment lien against the Property. (3 ER, pg. 240) On January 25, 2012, NAS recorded a notice of default and election to sell under homeowners association lien. (3 ER, pgs. 242-243) On June 27, 2012, NAS recorded a notice of foreclosure sale. (3 ER, pgs. 245-246) According to the recitals in the foreclosure deed recorded on May 20, 2013 (3ER, pgs. 256-257), NAS complied with all requirements of law to sell the Property to plaintiff for the high bid of $10,100.00.

Commonwealth Financial Corp. was identified as the Lender in a deed of trust recorded against the Property on May 19, 2005, and MERS was identified as the beneficiary "acting solely as a nominee for Lender and Lender's successors and assigns." (3 ER, pgs. 192-220) The deed of trust was assigned by MERS to defendant by an assignment of deed of trust recorded on July 5, 2011 (3 ER, pgs. 231-232) and by an assignment of deed of trust recorded on August 8, 2011. (3 ER, pgs. 234-235) No assignment of the deed of trust to Fannie Mae has ever been recorded.

Plaintiff filed its complaint (3 ER 271-274) in the district court for Clark County, Nevada seeking quiet title and declaratory relief that defendant's deed of trust was extinguished by the HOA foreclosure sale conducted on May 17, 2013.

Defendant filed a petition for removal on August 30, 2013 based on diversity of citizenship. (3 ER 259-266)

Defendant filed a motion for summary judgment on June 1, 2015. (2 ER 134-176)

Plaintiff filed an opposition to defendant's motion for summary judgment on June 16, 2015. (2 ER 49-127)

Defendant filed a reply in support of the motion for summary judgment on July 13, 2015. (2 ER 17-48)

On March 17, 2016, the district court entered its order granting defendant's motion for summary judgment. (1 ER 2-8) On March 17, 2016, judgment was entered in favor of defendant. (1 ER 1)

Plaintiff filed its notice of appeal on March 21, 2016.  (2 ER 9-10)

## IV.  **SUMMARY OF THE ARGUMENT**

NRS 116.3116(2) granted to the HOA a superpriority lien that had priority over the earlier recorded deed of trust assigned to defendant.  The nonjudicial foreclosure sale of this superpriority lien at the public auction held on May 17, 2013 extinguished defendant's "subordinate" deed of trust.

The provisions of 12 U.S.C. § 4617(j)(3) did not protect the deed of trust assigned to defendant from being extinguished because defendant failed to produce competent evidence that its deed of trust was  owned by Fannie Mae and because section 4617(j)(3) does not apply to nonjudicial foreclosures of assessment liens.

Defendant failed to produce competent evidence that its deed of trust was federally insured by FHA and HUD.

Defendant did not have prudential standing to assert claims based on rights that belong to FHFA, Fannie Mae, FHA or HUD.

The nonjudicial foreclosure process in NRS Chapter 116 is not unconstitutional and does not violate due process because the nonjudicial foreclosure process does not involve a "state actor" and  because copies of the notice of default and notice of sale are required to be mailed to holders of interests "subordinate" to the HOA's lien.

The statute does not violate the takings clauses in the United States and Nevada Constitutions because no property was acquired for "public use" and because defendant's deed of trust was always subject to the HOA's superpriority lien rights.

The extinguishment of a subordinate deed of trust by the nonjudicial foreclosure of an HOA's assessment lien does not violate public policy.

An HOA foreclosure sale is not required to be "commercially" reasonable, and the Uniform Commercial Code does not apply to a nonjudicial foreclosure sale conducted pursuant to NRS 116.31162 to 116.31168, and by incorporation, NRS 107.090.

/ / /

# V.  STANDARD OF REVIEW

In <u>FDIC v. New Hampshire Insurance Co.</u>, 953 F.2d 478, 485 (9th Cir. 1991), the court stated that "[w]e review an order granting summary judgment independently, or *de novo*, without deference to the ruling of the district court" and that the court "must determine whether there is a genuine issue of material fact in dispute, after viewing the evidence in the light most favorable to the party opposing the motion."

# VI.  ARGUMENT

**1. Defendant's deed of trust was extinguished by the foreclosure sale held on May 17, 2013.**

NRS 116.3116 provides in part:

**Liens against units for assessments.**

1. **The association has a lien on a unit for** any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, **any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due**. Unless the declaration otherwise provides, any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

2. **A lien under this section is prior** to all other liens and encumbrances on a unit **except:**

(a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;

(b) **A first security interest on the unit** recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

**The lien is also prior to all security interests described in paragraph (b)** to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and **to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become**

**due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien,** unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. If federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien, the period during which the lien is prior to all security interests described in paragraph (b) must be determined in accordance with those federal regulations, except that notwithstanding the provisions of the federal regulations, the period of priority for the lien must not be less than the 6 months immediately preceding institution of an action to enforce the lien. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association. (emphasis added)

NRS 116.3116 (2) provides that the HOA's super-priority lien for up to 9 months of charges is "prior to all security interests described in paragraph (b)." The first deed of trust assigned to defendant falls squarely within the language of paragraph (b).

In SFR Investments Pool 1, LLC v. U.S. Bank, N.A., 130 Nev., Adv. Op. 75, 334 P.3d 408, 409 (2014), the Nevada Supreme Court stated:

NRS 116.3116 gives a homeowners' association (HOA) a superpriority lien on an individual homeowner's property for up to nine months of unpaid HOA dues. With limited exceptions, this lien is "prior to all other liens and encumbrances" on the homeowner's property, even a first deed of trust recorded before the dues became delinquent. NRS 116.3116(2). We must decide whether this is a true priority lien such that its foreclosure extinguishes a first deed of trust on the property and, if so, whether it can be foreclosed nonjudicially. We answer both questions in the affirmative and therefore reverse.

At the conclusion of its opinion, the Nevada Supreme Court stated:

NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust. Because Chapter 116 permits nonjudicial foreclosure of HOA liens, and because SFR's complaint alleges that proper notices were sent and received, we reverse the district court's order of dismissal. In view of this holding, we vacate the order denying preliminary injunctive relief and remand for further proceedings consistent with this opinion.

334 P.3d at 419.

The foreclosure deed recorded on May 20, 2013 (3 ER 256-258) includes the following recitals on page 1 of the deed (3 ER 256):

5

Default occurred as set forth in a Notice of Default and Election to Sell, recorded on 1/25/2012 as instrument # 0003188 Book 20120125 which was recorded in the office of the recorder of said county.  Nevada Association Services, Inc. has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and  Notice of Default and the posting and publication of the Notice of Sale.

In Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc., 132 Nev. Adv. Op. 5, 366 P.3d 1105, 1112 (2016), the Nevada Supreme Court recognized that the recitals in a foreclosure deed are "conclusive, *in the absence of grounds for equitable relief.*" (quoting Holland v. Pendleton Mortg. Co., 61 Cal. App. 2d 570, 143 P.2d 493, 496 (1943))

In its motion for summary judgment, defendant did not identify or produce evidence of any failure by the HOA to comply with the  statutory requirements for the HOA foreclosure sale held on May 17, 2013.  According to SFR Investments Pool 1, LLC v. U.S. Bank, N.A., the nonjudicial foreclosure of the HOA's super priority lien extinguished the "first security interest"  assigned to defendant.

**2.    The provisions of 12 U.S.C. § 4617(j)(3) did not prevent the deed of trust assigned to defendant from being extinguished because Fannie Mae did not hold a recorded interest in the Property on the sale date.**

At pages 29 to 30 of its motion for summary judgment (2 ER, pgs. 162-163), defendant argued that extinguishing Fannie Mae's interest in the Property would violate 12 U.S.C. § 4617(j)(3).

At page 23 of its opposition (2 ER, pg. 71), plaintiff observed that defendant had failed to "submit any admissible evidence to show that the trust deed in question was assigned to Fannie Mae or that it was insured as an FHA loan."

In granting the defendant's motion, the district court concluded: "Because the evidence supports a finding that the property was federally owned at the time of the HOA foreclosure sale, the court concludes that the HOA foreclosure sale at issue was invalid."  (1 ER, pgs. 7-8) In reaching this conclusion, the court considered the affidavit of defendant's employee, Bella Kharson (2 ER, pgs. 43-44), a MERS

Milestones report (2 ER, pg. 46), and search results from Fannie Mae's "loan look up" website (2 ER, pg. 16), which were not filed with the court until July 13, 2015. Because this evidence was filed after plaintiff filed its opposition to defendant's motion on June 16, 2015 (2 ER, pgs. 49-127), plaintiff had no opportunity to respond to the evidence.

In footnote 1 to its decision, the court acknowledged that it was relying on the Bella Kharson affidavit and the exhibits even though they violated the rule that "[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-] movant an opportunity to respond." Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996), quoting Black v. TIC Investment Corp., 900 F.2d 112, 116 (7th Cir. 1990).

In accepting the new evidence offered by defendant, the court failed to consider that in violation of Fed. R. Civ. P. 56(c)(4), the affidavit of Bella Kharson was not "made on personal knowledge," did not "set out facts that would be admissible in evidence," and did not "show that the affiant or declarant is competent to testify on the matters stated." The statements by Bella Kharson proved that she did not claim to have ever seen the underlying note or any endorsement of the underlying note to Fannie Mae, and she did not claim to have any knowledge regarding the possession of the note. Bella Kharson also did not claim to have seen any assignment of the deed of trust to Fannie Mae.

Bella Kharson did not state that she personally recorded any of the information contained in the exhibits to her affidavit, and she did not state that she ever reviewed any underlying documents supporting the information in the exhibits to her affidavit.

Bella Kharson's affidavit also did not state that she had ever reviewed any documents that created any relationship between defendant and Fannie Mae relating to "[t]he loan file of Katherine and Bryant Sparks."

In Butner v. United States, 440 U.S. 48 (1979), the Supreme Court stated that "[p]roperty interests are created and defined by state law." Id. at 55. The Supreme

Court also stated:

> The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.
>
> <u>Id.</u>

Paragraph (J) on page 2 of the deed of trust (3 ER, pg. 193) states: "(J) **'Applicable Law'** means all controlling applicable federal, **state and local statutes**, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as **all applicable final, non-appealable judicial opinions**." (emphasis added)

Paragraph 16 at page 12 of the deed of trust (3 ER, pg. 203) expressly provides:

> **16. Governing Law; Severability; Rules of Construction.** This Security Interest shall be governed by federal law and the law of the jurisdiction in which the Property is located. **All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.** Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. (emphasis added)

Defendant's deed of trust states that any rights or obligations under the deed of trust are "subject to" the "requirements and limitations" of Nevada law.

Under Nevada law, a deed of trust is a conveyance of land that must comply with the statute of frauds. <u>Leyva v. National Default Servicing Corp.</u>, 127 Nev. 3, 255 P.3d 1275, 1279 (2011).

NRS 107.070 provides:

> **Recording of assignments of beneficial interests and instruments subordinating or waiving priority of deeds of trust.** The provisions of NRS 106.210 and 106.220 apply to deeds of trust as therein specified.

NRS 106.210 requires that "any assignment of the beneficial interest under a

8

deed of trust **must** be recorded." (emphasis added).

In <u>Edelstein v. Bank of New York Mellon</u>, 128 Nev., Adv. Op. 48, 285 P.3d 249, 259 (2012), the Nevada Supreme Court explained:

> Second, it is prudent to have the recorded beneficiary be the actual beneficiary and not just a shell for the "true" beneficiary. In Nevada, the purpose of recording a beneficial interest under a deed of trust is to provide "constructive notice ... to all persons." NRS 106.210. **To permit an entity that is not really the beneficiary to record itself as the beneficiary would defeat the purpose of the recording statute and encourage a lack of transparency.** (emphasis added)

In the present case, paragraph (E) on the first page of the deed of trust (3 ER, pg. 192) identifies MERS as "the beneficiary under this Security Instrument" and states: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." Paragraph (C) on the first page of the deed of trust identifies the "Lender" as "COMMONWEALTH FINANCIAL CORP., a CALIFORNIA Corporation." MERS is not named as a nominee for Fannie Mae.

When it acts as the agent for the beneficiary of a deed of trust, MERS has the power to transfer both the note and deed of trust. In <u>In re Mortgage Electronic Registration Systems, Inc.</u>, 754 F.3d 772 (9th Cir. 2014), the court described the MERS system and stated that the Nevada Supreme Court's opinion in <u>Edelstein v. Bank of New York Mellon</u>, 128 Nev., Adv. Op. 48, 285 P.3d 249 (2012), "makes clear that MERS does have the authority, for purposes of NRS § 107.080, to make valid assignments of the deed of trust to a successor beneficiary in order to reunify the deed of trust and the note." 754 F.3d at 785.

In the <u>Edelstein</u> case, the Nevada Supreme Court reviewed the roles assigned to MERS according to the language used in a deed of trust designating MERS as both "nominee" and "beneficiary" and stated:

> Pursuant to the express language of the deed of trust, "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property,' and to take any action required

of Lender...." **Accordingly, MERS, as an agent for New American Funding and its successors and assigns, had authority to transfer the note on behalf of New American Funding and its successors and assigns**. *See generally Leyva,* 127 Nev. at ____, 255 P.3d at 1279–80 (discussing "[t]he proper method of transferring ... a mortgage note"). (emphasis added)

286 P.3d at 258.

Regarding the designation of MERS as beneficiary, the Nevada Supreme Court stated:

The deed of trust also expressly designated MERS as the beneficiary; a designation we must recognize for two reasons. First, it is an express part of the contract that we are not at liberty to disregard, and it is not repugnant to the remainder of the contract. *See Royal Indem. Co.,* 82 Nev. at 150, 413 P.2d at 502. In *Beyer v. Bank of America,* the United States District Court for the District of Oregon examined a deed of trust which, like the one at issue here, stated that "MERS is the beneficiary under this Security Instrument." 800 F. Supp.2d 1157, 1160–62 (D.Or.2011). After examining the language of the trust deed and determining that the deed granted "MERS the right to exercise all rights and interests of the lender," the court held that "MERS [is] a proper beneficiary under the trust deed." *Id.* at 1161–62. **Further, to the extent the homeowners argued that the lenders were the true beneficiaries, "the text of the trust deed contradicts [their] position."** *Id.* at 1161; *accord Reeves v. ReconTrust Co., N.A.,* 846 F. Supp. 2d 1149 (D.Or.2012). Similarly here, the deed of trust's text, as plainly written, repeatedly designated MERS as the beneficiary, and we thus conclude that **MERS is the proper beneficiary**. (emphasis added)

286 P.3d at 258-259.

Under Nevada law, even if "beneficial interest in the loan" was "transferred" to Fannie Mae on June 22, 2005 as claimed by Bella Kharson in paragraph 5 of her affidavit (2 ER, pg. 44, ¶5), Nevada law provides that defendant became the owner of both the deed of trust and the underlying note when the assignment of deed of trust was recorded on July 5, 2011 (3 ER, pgs. 231-232) and on August 8, 2011. (3 ER, pgs. 234-235)

In Edelstein, the Nevada Supreme Court recognized that the note and deed of trust are assigned together:

Under the Restatement approach, a promissory note and a deed of trust are automatically transferred together unless the parties agree otherwise. Specifically, "[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."

10

Restatement (Third) of Prop.: Mortgages § 5.4(a) (1997). Similarly, "[e]xcept as otherwise required by the Uniform Commercial Code, a transfer of a [deed of trust] also transfers the obligation the [deed of trust] secures unless the parties to the transfer agree otherwise." *Id.* § 5.4(b). Thus, unlike the traditional rule, a transfer of either the promissory note or the deed of trust generally transfers both documents. The Restatement also diverges from the traditional rule in that it permits the parties to separate a promissory note and a deed of trust, should the parties so agree.

286 P.3d at 257-258.

The documents recorded with the Clark County Recorder prove that defendant, and not Fannie Mae, held all beneficial interest in the note and deed of trust on the date of the HOA foreclosure sale.

At pages 22 to 24 of its reply (2 ER, pgs. 38-40), defendant cited <u>Skylights LLC v. Byron</u>, 112 F. Supp. 3d 1145 (D. Nev. 2015), as authority that "NRS 116 was preempted by 12 U.S.C. § 4617(j)(3) where the secured interest is property of the FHFA as Conservator." In <u>Skylights</u>, however, the court recognized that before the HOA foreclosure sale was held on September 17, 2014, "[o]n March 7, 2014, CitiMortgage recorded a Corporate Assignment of Deed of Trust, assigning its interest in the Deed of Trust to Fannie Mae." 112 F. Supp. 3d at 1149.

In the present case, on the other hand, Fannie Mae has never held any recorded interest in the Property.

**3.    Because plaintiff is a bona fide purchaser, any unrecorded interest in the Property held by Fannie Mae is void as to plaintiff.**

In <u>Armstrong v. Exceptional Child Center, Inc.</u>, 575 U.S. ___ , 135 S. Ct. 1378, 1383 (2015), the United States Supreme Court rejected the Ninth Circuit's ruling that the Supremacy Clause gave providers of "habilitation services" an implied right of action. The Supreme Court stated that the Supremacy Clause creates a "rule of decision," but is not the "source of any federal rights" and "certainly does not create a cause of action." The Supreme Court also noted that "[i]t instructs courts what to do when state and federal law clash, but is silent regarding who may enforce

federal laws in court, and in what circumstances they may do so."

In the present case, the Supremacy Clause did not provide defendant with a cause of action because federal law does not contain any provision that permits the unrecorded transfer of the "beneficial interest" in the Sparks loan to Fannie Mae (2 ER, pg. 44, ¶5) to create an enforceable interest in the Property.

In <u>United States v. View Crest Garden Apts., Inc.</u>, 268 F.2d 380 (9th Cir. 1959), the court held that federal law would govern the appointment of a receiver for a mortgage that was assigned by National Bank of Commerce of Seattle to the Federal National Mortgage Association and then to FHA. Although noting that "the source of the law governing the relations between the United States and the parties to the mortgage here involved is federal," it was appropriate to select state law as "the applicable federal rule." <u>Id.</u> at 382. The court explained in further detail:

> **Thus state recording acts interfere with no federal policy as there is no federal recording system for the type of mortgages here involved.** It is commercially convenient to adopt existing state systems as it saves the expense of setting up a whole new federal recording system and it enables persons checking ownership interests in property to refer to one set of record books rather than two. (emphasis added)

<u>Id.</u> at 383.

As noted above, Paragraph (J) on page 2 of the deed of trust and Paragraph 16 at page 12 of the deed of trust expressly provide that the rights of the beneficiary under the deed of trust are governed by Nevada law.

NRS 111.205(1) provides that "[n]o estate or interest in land" shall be "granted, assigned, surrendered or declared" except by a deed or conveyance "subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by the party's lawful agent . . . ."

Nevada is a race notice state. See <u>Buhecker v. R.B. Petersen & Sons Const. Co., Inc.</u>, 112 Nev. 1498, 929 P.2d 937 (1996).

NRS 111.325 provides:

> **Unrecorded conveyances void as against subsequent bona fide purchaser for value when conveyance recorded.** Every conveyance

12

of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded.

NRS 111.180 provides:

**Bona fide purchaser: Conveyance not deemed fraudulent in favor of bona fide purchaser unless subsequent purchaser had actual knowledge, constructive notice or reasonable cause to know of fraud.**

    1.  Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

    2.  No conveyance of an estate or interest in real property, or charge upon real property, shall be deemed fraudulent in favor of a bona fide purchaser unless it appears that the subsequent purchaser in such conveyance, or person to be benefited by such charge, had actual knowledge, constructive notice or reasonable cause to know of the fraud intended.

Although NRS 111.315 permits an unrecorded interest to "be valid and binding between the parties thereto without such record," plaintiff is not a party to the unrecorded documents by which defendant claims that Fannie Mae holds an interest in the deed of trust publicly assigned to defendant. NRS 111.325 expressly protects plaintiff from defendant's claim that Fannie Mae held an unrecorded interest in the Property.

In Allison Steel Manufacturing Co. v. Bentonite, Inc., 86 Nev. 494, 471 P.2d 666 (1970), two tax liens by the Internal Revenue Service were recorded in March of 1964. The Nevada Supreme Court stated that "Appellant's constructive notice received from the IRS tax liens of record at the time its judgment was obtained on May 26, 1964, imposed a duty of inquiry whether the prior right under those liens was being foreclosed." Id. at 498. (emphasis added) The Court also stated:

'*** **When anything appears in these title deeds sufficient to put a**

13

1

**prudent man on inquiry** which if prosecuted with ordinary diligence would lead to actual knowledge of some right or title in conflict with the title he is about to purchase, it is his duty to make inquiry, and if he does not do so he is **chargeable with actual knowledge of what the inquiry would have disclosed.**' (emphasis added)

2

3

4

86 Nev. at 498, 471 P.2d at 668-669.

5

A page 4 of its decision (1 ER, pg. 5), the district court cited Rust v. Johnson,

6

597 F.2d 174 (9th Cir. 1979), as authority that state legislation must yield "to the

7

interests of the federal government when the legislation as applied interferes with the

8

federal purpose or operates to impede or condition the implementation of federal

9

policies and programs."

10

In Rust v. Johnson, however, Fannie Mae completed a foreclosure of its deed

11

of trust and conveyed the land to HUD in exchange for FHA insurance benefits

12

before the City of Los Angeles commenced foreclosure of an assessment for street

13

improvements. HUD conveyed the land to Paul and Nora Johnson who signed a deed

14

of trust in favor of California Mortgage Service who assigned the deed of trust to

15

Fannie Mae who then assigned its rights to HUD. Id. at 176. The deed of trust in the

16

present case was never assigned to either Fannie Mae or HUD.

17

In United States v. Stadium Apartments, Inc., 425 F.2d 358 (9th Cir. 1970), the

18

FHA insured a mortgage that was assigned to HUD, and the court held that the one

19

year redemption period under state law did not apply to a foreclosure decree in favor

20

of HUD.

21

In United States v. View Crest Gardens Apartments, Inc., 268 F.2d 380 (9 th

22

Cir. 1959), the lender assigned the mortgage to the Federal National Mortgage

23

Association who assigned it to FHA. The United States then filed a foreclosure

24

action in federal court and applied for a receiver. The Court of Appeals held that

25

federal law, not state law, governed the federal government's request for appointment

26

of a receiver.

27

In United States v. Victory Highway Village, Inc., 662 F.2d 488, 498 (8th Cir.

28

1981), a Fannie Mae loan was assigned to HUD, and the United States was the

14

1  plaintiff that filed a claim for judicial foreclosure.

2      In the present case, no document has ever appeared in the public record stating
3  that Fannie Mae claimed to own any interest in the Property let alone the first deed
4  of trust assigned to defendant on July 5, 2011 and August 8, 2011.  On the date of the
5  HOA foreclosure sale, absolutely nothing appeared in the public record that would
6  alert plaintiff to any claim by Fannie Mae that it held an interest in the Property.

7      The bona fide purchaser doctrine protects a purchaser's title against competing
8  legal or equitable claims of which the purchaser had no notice at the time of the
9  conveyance. 25 Corp. v. Eisenman Chemical Co., 101 Nev. 664, 709 P.2d 164, 172
10 (1985); Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246, 247 (1979).

11     The district court's decision states that 12 U.S.C. § 4617(j)(3) prevented the
12 HOA foreclosure sale from extinguishing "property of the Agency," but Nevada's
13 real property laws establish that Fannie Mae did not hold any interest in the Property
14 foreclosed by the HOA.  Because Fannie Mae held no recorded interest in the
15 Property, the Agency (FHFA) could not succeed by law to any interest in the Property
16 pursuant to 12 U.S.C. § 4617(b)(2)(A)(I).

17     Under Nevada law, which was specifically incorporated by Paragraph 16 of the
18 deed of trust, the unrecorded interest that defendant claims was owned by Fannie Mae
19 was void as to the plaintiff.

20     In addition, there is no conflict between 12 U.S.C. § 4617(j)(3) and Nevada's
21 bona fide purchaser laws.  In Valle del Sol Inc. v. Whiting, 732 F.3d 1006 (9th Cir.
22 2013), the court identified three classes of preemption: (1) express preemption "when
23 the text of a federal statute explicitly manifests Congress's intent to displace state
24 law"; (2) field preemption where "the States are precluded from regulating conduct
25 in a field that Congress, acting within its proper authority, has determined must be
26 regulated by its exclusive governance"; and (3) conflict preemption "where it is
27 impossible for a private party to comply with both state and federal law" or where the
28 challenged state law "stands 'as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress.'" Id. at 1022-1023.

In the present case, express preemption does not apply because no provision in Title 12 of the U.S. Code purports to displace the recording laws of the State of Nevada and the inability under Nevada law to enforce an unrecorded property interest against a bona fide purchaser like the plaintiff.

Field preemption does not apply because the United States Supreme Court recognized in Butner v. United States, 440 U.S. 48 (1979), that "[p]roperty interests are created and defined by state law." Id. at 55. The Court of Appeals in United States v. View Crest Garden Apts., Inc., 268 F.2d 380 (9th Cir. 1959), agreed that "state recording acts interfere with no federal policy as there is no federal recording system for the type of mortgages here involved." Id. at 383.

Conflict preemption does not apply because compliance with the recording laws of the State of Nevada does not make it impossible to comply with 12 U.S.C. § 4617. Compliance with Nevada's recording laws does not stand as an obstacle to the full purposes and objectives of Congress.

12 U.S.C. § 4617(j)(3) only protects "property of the Agency" and not property interests of Fannie Mae's alleged undisclosed agent, defendant. Although 12 U.S.C. § 4617(b)(2)(A)(1) provides that the Agency shall immediately succeed to "all rights, titles, powers and privileges of the regulated entity" and "the assets of the regulated entity," no language in 12 U.S.C. § 4617 purports to include an "unrecorded" interest that is "void" under state law as an "asset" of the regulated entity.

In addition, 12 U.S.C. § 4617(j)(3) does not prohibit foreclosure or sale of property of the Agency in every instance – it only prohibits foreclosure or sale "without the consent of the Agency." If, however, the Agency (or a regulated entity) has no disclosed interest in real property, how could a foreclosing entity (or an innocent purchaser) know that consent was required? Nothing in the statutory language reveals an intent by Congress to protect concealed property interests (that are not recognized under state law) from being extinguished by a foreclosure sale.

16

In Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1023 (9th Cir. 2013), the court recognized that "the purpose of Congress is the ultimate touchstone in every pre-emption case," and "in a field which the states have traditionally occupied, . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." In the present case, 12 U.S.C. §4617(j) does not express any intent by Congress to pre-empt the nonjudicial foreclosure of an HOA superpriority lien pursuant to existing state law against a deed of trust that is not held in the name of the Agency (FHFA) or a regulated entity (Fannie Mae).

**4.     The provisions of 12 U.S.C. § 4617(j)(3) do not apply to the nonjudicial foreclosure of an HOA lien by a private party.**

Furthermore, when properly read in the context of 12 U.S.C. § 4617 as a whole, the language in subsection (j)(3) does not apply to the HOA's nonjudicial foreclosure of its super priority lien. The district court applied subsection (j)(3) to a situation never contemplated by Congress.

The United States Supreme Court has applied the following principles when interpreting statutory language: 1) "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S. Ct. 843, 846 (1997); 2) "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." Kmart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S. Ct. 1811, 1818 (1988); and 3) "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Crandon v. United States, 494 U.S. 152, 158, 110 S. Ct. 897, 1001 (1990).

In the present case, the heading for subsection (j) of 12 U.S.C. § 4617 states that subsection (j) involves "Other Agency exemptions." The heading for

17

subparagraph 1 of 12 U.S.C. § 4617(j) is the word "Applicability," and subparagraph 1 states that "[t]he **provisions of this subsection** shall **apply with respect to the Agency** in any case in which the Agency is acting as a conservator or receiver." (emphasis added)    12 U.S.C. § 4502(2) defines the term "Agency" to mean "the Federal Housing Finance Agency established under section 4511 of this title." 12 U.S.C. §4502(20)(A) defines the term "regulated entity" to mean "the Federal National Mortgage Association and any affiliate thereof."    In this case, defendant was the recorded beneficiary of the deed of trust and not Fannie Mae (the "regulated entity") or FHFA (the "Agency").

The heading for subparagraph (2) of 12 U.S.C. § 4617(j) is the word "Taxation," and subparagraph (2) of § 4617(j) states:

> The **Agency, including its franchise, its capital, reserves, and surplus, and its income**, shall be **exempt from all taxation** imposed by any State, county, municipality, or local taxing authority, except that **any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation** to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed. (emphasis added)

Consistent with the heading for "[o]ther Agency exemptions," subparagraph (2) provides the Agency (and not Fannie Mae or defendant) with an "exemption" from all taxation except for real property taxes assessed against "any real property of the Agency."  Subparagraph (2) of Section 4617(j) does not exempt the Agency or any real property of the Agency from claims or liens by a person or entity other than "any State, county, municipality, or local taxing authority."  Absolutely no language in subparagraph (2) grants the Agency or its real property any exemption from the attachment or foreclosure of an HOA assessment lien.

Subparagraph (4) of Section 4617(j) bears the heading "[p]enalties and fines" and provides:

The Agency shall not be liable for any amounts in the nature of penalties

18

or fines, including those arising from the failure of any person to pay **any real property, personal property, probate, or recording tax** or any recording or filing fees when due. (emphasis added)

It is in this context (sandwiched between two subparagraphs exempting "the Agency" from taxation) that subparagraph (3) of 12 U.S.C. § 4617(j) bears the heading of "[p]roperty protection" and states:

No **property of the Agency** shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the **property of the Agency.** (emphasis added)

Read in the context of the main heading and the other subparagraphs in 12 U.S.C. § 4617(j), the language in 12 U.S.C. § 4617(j)(3) did not require that the HOA obtain "the consent of the Agency" before conducting the nonjudicial foreclosure sale of the Property owned by Bryant Sparks and Katherine Sparks and not subject to any recorded interest held by either FHFA or Fannie Mae.

Section 4617(j)(3) is modeled after similar language contained in 12 U.S.C. § 1825(b)(2) that governs the Federal Deposit Insurance Corporation ("FDIC"). In FDIC v. McFarland, 243 F.3d 876 (5th Cir. 2001), the court of appeals for the Fifth Circuit affirmed the district court's holding that the FDIC lost its priority to an intervening judgment lien when the FDIC failed to reinscribe its deed of trust within the statutory period provided by Louisiana law. The court read Section 1825(b)(2) in the context of the statute as a whole and concluded: "This Court has not applied the exemption of section 1825(b)(2) to liens not attached by state and local taxing authorities."

Plaintiff attached to its opposition copies of Fannie Mae's announcements directing its servicers to pay assessments that could obtain priority over a Fannie Mae mortgage. (2 ER, pgs. 118-127) Under its agreement with Fannie Mae, defendant is required to hold Fannie Mae harmless for any failure by defendant to comply with Fannie Mae guidelines. Consequently, even if Fannie Mae had an interest in the trust deed, defendant's failure to protect the deed of trust from being extinguished by the

19

HOA foreclosure sale cannot cause any loss to Fannie Mae, the FHFA or the federal government. Fannie Mae can simply enforce its own guidelines and refuse any payment or reimbursement to defendant for the extinguished deed of trust.

Because it was possible for defendant "to comply with both state and federal law" and because requiring defendant to bear the consequences of its failure is not "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the extinguishment of defendant's "subordinate" deed of trust does not conflict with federal law. <u>Valle del Sol Inc. v. Whiting</u>, 732 F.2d at 1023.

**5. Defendant did not produce any admissible evidence that the underlying note was ever legally transferred to Fannie Mae**.

Regarding transfer of the underlying note, the Nevada Supreme Court has stated that "[t]he proper method of transferring the right to payment under a mortgage note is governed by Article 3 of the Uniform Commercial Code – Negotiable instruments, because a mortgage note is a negotiable instrument." <u>Leyva v. National Default Servicing Corp.</u>, 127 Nev. 3, 255 P.3d 1275, 1279 (2011). The Court also stated: "Thus, a mortgage note is a negotiable instrument, and any negotiation of a mortgage note must be done in accordance with Article 3." <u>Id.</u> at 1280.

In order to negotiate a note, NRS 104.3201(1) requires: "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument **and** its endorsement by the holder." (emphasis added) NRS 104.3204(1) provides that an "endorsement" is a signature "made on an instrument for the purpose of negotiating the instrument."

In addition, a note may be transferred without an endorsement, but NRS 104.3203(2) requires that the party seeking to establish its right to enforce the note "must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it."

The affidavit of Bella Kharson (2 ER, pgs. 43-44) contained no statements regarding Fannie Mae's possession of the note or the endorsement of the note by

Katherine and Bryant Sparks. The affidavit of Bella Kharson also contained no statements regarding Fannie Mae's possession of the unendorsed note signed by Katherine and Bryant Sparks. As a result, the court could not properly conclude that the note was "federally owned at the time of the HOA foreclosure sale" in compliance with either NRS 104.3201(1) or NRS 104.3203(2).

The court also relied on a copy of a Fannie Mae Loan Lookup stating that "[i]t appears that Fannie Mae owns your loan." This document was printed from the home page of Fannie Mae's website on June 29, 2015 and was not filed with the court until July 13, 2015. (2 ER, pgs. 11-16) This document does not contain any admissible evidence of how or when Fannie Mae came to "appear" to own the loan by Katherine and Bryant Sparks.

**6.   Defendant did not produce any admissible evidence that its deed of trust was federally insured.**

At page 11 of its motion for summary judgment (2 ER, pg. 144), defendant also claimed that "[i]t is undisputed that the Deed of Trust was insured under the FHA insurance program" and that "the Supremacy Clause bars the HOA foreclosure sale in question."

At page 6 of its opposition (2 ER, pg. 54), plaintiff stated that defendant had "produced no evidence proving that the deed of trust was ever insured by FHA or that HUD ever held any interest in the deed of trust." Plaintiff also distinguished the three district court decisions cited by defendant by noting that in the present case, neither the deed of trust nor the Property had been conveyed to HUD. (2 ER, pgs. 56-57)

In Freedom Mortgage Corp. v. Las Vegas Development Group, LLC, 106 F. Supp. 3d 1174 (D. Nev. 2015), the court recognized that insurance coverage by FHA and HUD terminates pursuant to 24 C.F.R. §§ 203.315(a)(2)(i), (b)(2) when a lender allows the HOA to foreclose its lien and sell the property to "a party other than the mortgagee" (Id. at 1182, n.37) and that "[n]othing prevents a lender from simultaneously complying with HUD's program and Nevada's HOA-foreclosure law"

1  (Id. at 1184)

2      At page 11 of its reply (2 ER, pg. 27), defendant sought to distinguish the

3  present case from Freedom Mortgage by stating: "Additionally, this case is

4  distinguishable from *Freedom Mortgage* because the loan in question was federally

5  owned" and "[t]he Property in *Freedom Mortgage* was only federally insured." As

6  noted above, the deed of trust was owned by the defendant on the date of the HOA

7  foreclosure sale and not by either Fannie Mae or FHFA.

8  **7.      Defendant did not have prudential standing to make arguments**
9  **         based on rights belonging to FHFA.**

10     At pages 10 and 11 of its opposition to defendant's motion for summary

11 judgment (2 ER, pgs. 58-59), plaintiff argued that even if Fannie Mae held an

12 enforceable interest in the Property, defendant did not have prudential standing to

13 make arguments on behalf of either Fannie Mae or FHFA. (2 ER, pgs. 58-59)

14     In Skylights LLC v. Byron, 112 F. Supp. 3d 1145 (D. Nev. 2015), the district

15 court entered an order approving a stipulation to add FHFA as an intervenor, FHFA

16 filed an answer to the complaint, and Fannie Mae and FHFA filed the joint motion

17 for summary judgment. Id. at 1149. In the present case, neither FHFA nor Fannie

18 Mae appeared to claim that they had any interest in the Property or that they objected

19 in any way to the extinguishment of defendant's "subordinate" deed of trust.

20     Defendant also failed to produce any evidence of it authority to enforce the

21 property rights of either FHFA or Fannie Mae. Property interests of the defendant

22 are without question not "property of the Agency" protected from foreclosure by 12

23 U.S.C. § 4617(j)(3).

24     Defendant also failed to prove that defendant has any authority to make legal

25 arguments on behalf of FHFA. Because the protection provided by 12 U.S.C. §

26 4617(j)(3) applies only to property of the Agency, and not to property of Fannie Mae,

27 defendant would have to prove that it has authority to act on behalf of the Agency

28 (FHFA) and not Fannie Mae.

In Freedom Mortgage Corporation v. Las Vegas Development Group, LLC, 106 F. Supp. 3d 1174 (D. Nev. 2015), the lender challenged the extinguishment of its deed of trust by an HOA foreclosure sale because the loan was insured by HUD. The court noted that prudential standing "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Id. at 1179, quoting United States v. Lazarenko, 476 F.3d 642, 649-50 (9th Cir. 2007)(quoting Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)). The court also stated: "Essentially, the standing question in such cases is whether the constitutional . . . provision on which the claim rests properly can be understood as granting persons in plaintiff's position a right to judicial relief." Id. at 1179-1180, quoting The Wilderness Soc'y v. Kane Cnty., Utah, 632 F.3d 1162, 1169 (10th Cir. 2011)(quoting Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

In Warth v. Seldin, 422 U.S. 490 (1975), various organizations and individuals from Rochester, New York filed action against the town of Penfield and members of Penfield's zoning, planning, and town boards asserting that the town's zoning ordinance violated their Ninth and Fourteenth Amendment rights by precluding low- and moderate-cost housing. The Supreme Court agreed with the district court and the court of appeals and found that the plaintiffs lacked standing:

> We address first the principles of standing relevant to the claims asserted by the several categories of petitioners in this case. **In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.** This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. E. g., Barrows v. Jackson, 346 U. S. 249, 255-256 (1953).
>
> Id. at 498.

Because defendant's motion sought relief based only upon Fannie Mae's

23

unrecorded interest in the deed of trust, defendant did not have standing to enforce rights that belonged to Fannie Mae or FHFA and not to defendant. The district court, however, found that "defendant cites to no binding authority, nor does the court know of any, limiting federal preemption arguments to government parties." (1 ER, pg. 7)

The district court also stated that "the above-cited precedent forbids application of state law that impedes a federal interest" and that "[b]ecause the evidence supports a finding that the property was federally owned at the time of the HOA foreclosure sale, the court concludes that the HOA foreclosure sale at issue was invalid." (1 ER, pgs. 7-8)

As noted above, the present case is unlike all of the cases cited by the district court because Fannie Mae has never held any "recorded" interest in the Property, and the extinguishment of defendant's subordinate deed of trust cannot "impede" a federal interest.

In Freedom Mortgage Corporation v. Las Vegas Development Group, LLC, 106 F. Supp. 3d 1174, 1184 (D. Nev. 2015), the court stated:

> Freedom Mortgage's argument that "[a]llowing HUD's interest to be extinguished pursuant to Nevada law would undermine—in fact, eliminate—HUD's ability to obtain title after foreclosure and resell the [p]roperty (or to receive an assignment of the mortgage and foreclose in its own name)" mischaracterizes the effect of NRS 116.3116 in this case by skipping a crucial step in the claim process. The lender's interest is extinguished by the foreclosure, not HUD's. And the lender's inability to convey good and marketable title to HUD results in a loss to the lender, not to HUD.

The same analysis applies to the present case because the extinguishment of defendant's subordinate deed of trust cannot affect Fannie Mae in any way. Fannie Mae has never held any enforceable interest in the Property, and defendant has the obligation to indemnify Fannie Mae for any losses created by defendant's failure to protect defendant's "subordinate" deed of trust from being extinguished.

**8. The foreclosure process in NRS Chapter 116 does not violate due process because no "state actor" participates and because the statute requires that copies of the notice of default and the notice of sale be mailed to holders of "subordinate" interests.**

24

1    At page 11 of defendant's motion for summary judgment (2 ER, pg. 144),
2    defendant argued that the HOA foreclosure statute violates due process because
3    "none of its express notice provisions provided for mandatory notice to lenders."

4    On the other hand, in Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922 (1982),
5    the U.S. Supreme Court recognized that "[o]ur cases have accordingly insisted that
6    the conduct allegedly causing the deprivation of a federal right be fairly attributable
7    to the State" and that "fair attribution" required a two-part approach: 1) "the
8    deprivation must be caused by the exercise of some right or privilege created by the
9    State"; and 2) "the party charged with the deprivation must be a person who may
10   fairly be said to be a state actor." Id. at 937. In Lugar, the Court found that "joint
11   participation" between a private party and the Clerk of the state court who issued a
12   writ of attachment, which was then executed by the County Sheriff, satisfied the
13   "state actor" requirement.

14   The Court in Lugar cited its prior ruling in Flagg Bros., Inc. v. Brooks, 436
15   U.S. 149 (1978), and the Court acknowledged that even where the state was
16   responsible for creating a statute, "[a]ction by a private party pursuant to this statute,
17   without something more, was not sufficient to justify a characterization of that party
18   as a 'state actor.'" 475 U.S. at 939.

19   Similarly, in Apao v. Bank of New York, 324 F.3d 1091, 1092 (9th Cir. 2003),
20   the court rejected a due process challenge to Hawaii's nonjudicial foreclosure statute
21   and stated that there had been "no legal or historical development in the intervening
22   years that would require a departure from prior authority." The prior authority in
23   Charmicor, Inc. v. Deaner, 572 F.2d 694 (9th Cir. 1978), rejected a due process
24   challenge to Nevada's nonjudicial foreclosure statute.

25   In Melara v. Kennedy, 541 F.2d 802 (9th Cir. 1976), the court affirmed the
26   district court's finding that the extra-judicial sale of stored goods to enforce a
27   warehouseman's lien under California Commercial Code § 7210 was not "a
28   deprivation, under color of state law, of the due process rights of the owner of those

goods." Id. at 803. The court stated that "[t]he authorization by statute of the challenged conduct does not by itself require a finding of state action," (Id. at 804) and that "lack of common law origin is a factor of dubious worth." (Id. at 806) The court also recognized that "the statute creates only the right to act; it does not require that such action be taken." Id.

Defendant cited Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983) (2 ER, pg. 148), but that case involved a tax sale conducted by the county treasurer, and the Indiana statute did not require any written notice to be provided by mail or personal service to mortgagees whose liens were inferior to the tax lien.

No state actor is involved in a nonjudicial foreclosure sale by an HOA, and NRS 116.31168(1) expressly provides that the provisions of NRS 107.090 apply to an HOA lien foreclosure "as if" the lien were a deed of trust being foreclosed.

NRS 107.090(3)(a) requires that a copy of the notice of default be mailed to each person who has recorded a request for notice pursuant to NRS 107.090(2). NRS 107.090(3)(b) requires that a copy of the notice of default must also be mailed to "each other person with an interest" whose interest is "subordinate" to the HOA's super priority lien. NRS 107.090(4) requires that notice of the time and place of sale be mailed to each person described in NRS 107.090(3).

Pursuant to NRS 116.3116(2), the deed of trust held by defendant was "subordinate" to the HOA's super priority lien. As a result, NRS 107.090 (as incorporated by NRS 116.31168(1)) required that copies of both the notice of default (NRS 107.090(3)) and the notice of sale (NRS 107.090(4)) be mailed by the HOA's foreclosure agent to defendant as the holder of an interest "subordinate" to the HOA's super priority lien.

In SFR Investments Pool 1, LLC v. U.S. Bank, N.A., 130 Nev., Adv. Op. 75, *21-22, 334 P.3d 408, 418 (2014), the Nevada Supreme Court adopted this interpretation of the statute by stating:

In view of the fact that the "requirements of law" include compliance

with NRS 116.31162 through NRS 116.31168 and, **by incorporation, NRS 107.090,** *see* **NRS 116.31168(1)**, we conclude that U.S. Bank's due process challenge to the lack of adequate notice fails, at least at this early stage of the proceeding. (emphasis added)

In State v. Steven Daniel P. (In re Steven Daniel P.), 129 Nev., Adv. Op. 73, 309 P.3d 1041, 1046 (2013), the Nevada Supreme Court applied the concept of incorporating a statute by reference in the context of NRS Chapter 62C and stated:

> The United States Supreme Court has held that "[w]here one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute." Hassett v. Welch, 303 U.S. 303, 314 (1938) (quoting 2 J.G. Sutherland & John Lewis, *Statutes and Statutory Construction* 787 (2d ed. 1904)); *see also* State ex rel. Walsh v. Buckingham, 58 Nev. 342, 349, 80 P.2d 910, 912 (1938) ("A statute by reference made a part of another law becomes incorporated in it and remains so as long as the former is in force.")

Consequently, the provisions of NRS 107.090 must be read as if they were "incorporated bodily" into NRS Chapter 116.

 NRS 116.31166(1) states that the recitals in the foreclosure deed recorded on recorded on May 20, 2013 (3 ER, pgs. 256-257), are "conclusive proof" that copies of both the notice of default and election to sell, recorded on January 25, 2012 (3 ER, pgs. 242-243), and the notice of foreclosure sale, recorded on June 27, 2012 (3 ER, pgs. 245-246), were mailed to defendant as required by statute. Defendant produced no evidence disproving the recitals.

At page 18 of its motion for summary judgment, defendant argued that incorporating the mandatory notice provisions in NRS 107.090(3)(b) and NRS 107.090(4) "would render superfluous the express 'opt-in' notice provisions contained in NRS 116.3116, in violation of the rules of statutory construction." However, the request for notice provisions apply to any "person with an interest," and the "mandatory" notices required by NRS 107.090(3)(b) and NRS 107.090(4) are mailed only to holders of "subordinate" liens. Because more people qualify to request notice than are required to be mailed notice as holders of "subordinate" liens, the "mandatory" notice provisions do not render the request for notice provisions

27

1  "superfluous."

2      At page 19 of its motion for summary judgment, defendant argued that because
3  the caption to NRS 116.31168 refers to *requests* and to *notice of default*, the language
4  in NRS 116.31168(1) does not incorporate NRS 107.090(4) requiring that a copy of
5  the notice of time and place of sale be mailed to holders of interests "subordinate" to
6  the HOA lien. To the contrary, NRS 116.31168(1) expressly incorporates "[t]he
7  provisions of NRS 107.090" and not just the provisions of NRS 107.090(3), which
8  require mailing of the notice of default. NRS 107.090(4), which is without question
9  one of the provisions of NRS 107.090, requires that a copy of the notice of sale be
10 mailed to "each person described in subsection 3."

11     When a senior deed of trust is foreclosed, there is no doubt that NRS
12 107.090(3) requires that a copy of the notice of default be mailed **both** to "[e]ach
13 person who has recorded a request for a copy of the notice" pursuant to NRS
14 107.090(2) **and** to "[e]ach other person with an interest whose interest or claimed
15 interest is subordinate to the deed of trust." The definition of "person with an interest"
16 in NRS 107.090(1) includes holders of "any right, title or interest in, or lien or charge
17 upon, the real property." This definition includes holders of deeds of trust. NRS
18 107.090(3)(b) therefore requires that notice be mailed to holders of deeds of trust
19 "subordinate" to "the deed of trust" being foreclosed. NRS 107.090(4) requires that
20 a copy of the notice of sale be mailed to the same persons.

21     These notice requirements of NRS 107.090(3)(b) apply regardless of whether
22 the holder of the subordinate interest (deed of trust) records a request for a copy of
23 the notice in order to qualify to receive the notice required by NRS 107.090(3)(a).
24 **If notice was required only for those persons who record a request for notice,**
25 **there would be no reason for NRS 107.090(3)(b) to exist because all such persons**
26 **would already be covered by NRS 107.090(3)(a)**. Because NRS 107.090(3)(a) and
27 NRS 107.090(3)(b) are connected by the word "and," the statute without question
28 requires that notice be provided  both to holders of interests who have recorded a

request for notice and to holders of "subordinate" interests even if they have not recorded a request for notice.

NRS 116.31168(1) states that NRS 107.090 is to be applied to an HOA's foreclosure of its lien "**as if** a deed of trust were being foreclosed." (emphasis added) This means that the words "deed of trust" at the end of NRS 107.090(3) need to be read as if the words "association's lien" appeared in their place. The plain intent of NRS 116.311168(1) is that NRS 107.090 be applied to an HOA foreclosure to require that notice be mailed to both holders of interests who have recorded a request for notice and holders of interests "subordinate" to the association's lien regardless of whether they have recorded a request for notice. This is exactly the type of notice provision that defendant claims is required by Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), Tulsa Prof'l Collection Servs., Inc. v.Pope, 485 U.S. 478 (1988), and Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983).

The Nevada Supreme Court has recognized a general presumption that statutes will be interpreted in compliance with the Constitution. Sereika v. State, 114 Nev. 142, 955 P.2d 175, 180 (1998). The Nevada Supreme Court has also stated that "statutes must be construed consistent with the constitution and, where necessary, in a manner supportive of their constitutionality." Foley v. Kennedy, 110 Nev. 1295, 1300, 885 P.2d 583, 586 (1994). Where a statute is susceptible to both a constitutional and an unconstitutional interpretation, the court is obliged to construe the statute so that it does not violate the constitution. Whitehead v. Nevada Commission on Judicial Discipline, 110 Nev. 380, 878 P.2d 913, 919 (1994), citing Sheriff v. Wu, 101 Nev. 687, 708 P.2d 305 (1985).

The Nevada Supreme Court has also recognized that when the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it. City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989). Additionally, courts must construe statutes to give meaning to all of their parts and language, and courts are to read each sentence,

29

phrase, and word to render it meaningful within the context of the purpose of the legislation.  Board of County Comm'rs v. CMC of Nevada, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983). A statute should be interpreted to give the terms their plain meaning, considering the provisions as a whole, so as to read them in a way that would not render words or phrases superfluous or make a provision nugatory. Southern Nevada Homebuilders v. Clark County 121 Nev. 446, 117 P.3d 171 (2005). A statute should be construed so that no part is rendered meaningless**.**  Public Employees' Benefits Program v. Las Vegas Metropolitan Police Department 124 Nev. 138, 179 P.3d 542 (2008).

All of these standards are violated by defendant's interpretation that uses the caption assigned to NRS 116.31168 to limit the provisions of NRS 107.090 that are incorporated by NRS 116.31168(1) even though the language used in the body of the statute incorporates "the provisions" of NRS 107.090 without limit.  The same standards are violated by defendant's failure to treat the association's lien "as if a deed of trust were being foreclosed," so that the notice  requirement incorporated from NRS 107.090(3)(b) can be understood to require that notice be provided to all persons "with an interest" whose interests are "subordinate" to the "association's lien."

The statutory requirements for foreclosure of an HOA lien and trust deed are virtually identical, and the statutes mirror  each other. Because the notice requirements are constitutional when used to foreclose a deed of trust, they are constitutional when used to foreclose an HOA assessment lien.

**9.** **The extinguishment of defendant's deed of trust does not violate the takings clauses in the United States Constitution and the Nevada Constitution.**

At page 21 of its motion for summary judgment (2 ER, pg. 154), defendant argued that "[p]ermitting the extinguishment of a first-recorded deed of trust in favor of a *de minimis* homeowners' association's lien to recover several months of

30

assessments is a taking that violates both Constitutions." Defendant failed, however, to identify the "public use" for which its deed of trust was "taken."

Both the adoption of NRS Chapter 116 by the Nevada legislature in 1991, and the recording of the CC&Rs for the HOA on February 5, 2003 pre-dated the recording of the deed of trust on May 19, 2005 and the assignment of the deed of trust to defendant on July 5, 2011 and August 8, 2011. Defendant was therefore "on notice that by operation of the statute, the [earlier recorded] CC&Rs might entitle the HOA to a super priority lien at some future date which would take priority over a [later recorded] deed of trust." SFR Investments Pool 1, LLC v. U.S. Bank, N.A., 130 Nev., Adv. Op. 75, *22, 334 P.3d 408, 418 (2014), quoting 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A., 979 F. Supp. 2d 1142, 1152 (D. Nev. 2013).

In United States v. Security Industrial Bank, 459 U.S. 10 (1982), the Supreme Court held that the exemptions created by 11 U.S.C. § 522(f)(2) could not have "retrospective application" and invalidate liens acquired before the enactment date of the Bankruptcy Reform Act of 1978. In Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935), the Supreme Court held that a sub-section added to §75 of the Bankruptcy Act on June 28, 1934 could not be applied to change the mortgagee's rights in mortgages recorded in 1922 and 1924. In the present case, NRS Chapter 116 was enacted and the CC&Rs for the HOA were recorded before defendant's deed of trust was recorded.

In Armstrong v. United States, 364 U.S. 40 (1960), the United States took ownership of 11 boats that were subject to the petitioners' materialmen's liens under state law and thereby made those liens unenforceable. In the present case, the HOA's private foreclosure sale did not involve a government purchaser, and defendant's deed of trust was always subordinate to the HOA's super priority lien rights.

At page 23 of its motion for summary judgment (2 ER, pg. 156), defendant argued that a takings analysis is not limited to "outright acquisitions" of property by the government, but that "the government's 'simply impos[ing] a general economic

31

regulation,' which 'in effect transfers the property interest from a private creditor to a private debtor' constitutes a government taking."   No such economic regulation was adopted by the government in the present case.

**10.     The HOA foreclosure statute does not violate public policy.**

At page 24 of its motion for summary judgment (2 ER, pg. 157), defendant argued that  allowing the HOA to foreclose its assessment lien conflicts with Nevada and federal public policy that "favor the exploration of options to avoid foreclosure and assisting homeowners who face economic hardships."  None of the statutes cited by defendant apply to HOA assessment liens, and the economic hardships asserted by defendant at page 25 of its motion (2 ER, pg. 258) could have easily been avoided if defendant had paid the "super priority" portion of the HOA's assessment lien as intended by the drafters of the UCIOA.   Defendant also failed to produce any evidence to support the arguments made at pages 25 and 26 of its motion regarding the impact that the decision in SFR Investments Pool 1, LLC v. U.S. Bank, N.A.  will have on lenders.

**11.     An HOA foreclosure sale is not required to be "commercially" reasonable.**

At page 26 of its motion (2 ER, pg. 159), defendant claimed that "[t]he HOA's failure to sell the property in a commercially reasonable manner voids the sale and constitutes an independent basis for granting Flagstar quiet title in the Property." After making this statement, defendant cited Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963), where the Nevada Supreme Court adopted the following rule found in Oller v. Sonoma County Land Title Company, 137 Cal. App. 2d 633, 635, 290 P.2d 880, 882 (1955):

> However, even assuming that the price was inadequate, that fact standing alone would not justify setting aside the trustee's sale. "In California, it is a settled rule that inadequacy of price, however gross, is not a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price."

32

1   This same California rule was applied by the Nevada Supreme Court in the
2   cases of <u>Shadow Wood Homeowners Association, Inc. v. New York Community
3   Bancorp, Inc.</u>, 132 Nev., Adv. Op. 5, 366 P.3d 1105, 1111 (2016); <u>Long v. Towne</u>,
4   98 Nev. 11, 639 P.2d 528, 530 (1982); <u>Turner v. Dewco Services, Inc.</u>, 87 Nev. 14,
5   479 P.2d 462 (1971); and <u>Brunzell v. Woodbury</u>, 85 Nev. 29, 449 P.2d 158 (1969).

6       Defendant did not produce any evidence of the required "element of fraud,
7   unfairness, or oppression" bringing about the price paid by plaintiff that defendant
8   contends in itself constitutes grounds to set aside the sale.

9       In <u>Shadow Wood</u>, the Nevada Supreme Court applied the standards adopted
10  in  <u>Golden v. Tomiyasu</u> to reverse a summary judgment setting aside an HOA
11  foreclosure sale even though the purchaser paid only $11,018.39 for the property.

12      In <u>Levers v. Rio King Land & Investment Co.</u>, 93 Nev. 95, 98-99, 560 P.2d
13  917, 920 (1977), the Nevada Supreme Court applied the language in NRS
14  104.9504(3) that now appears in NRS 104.9610(2) to a secured party that mailed a
15  letter to the debtor only 8 days before a sale that was attended only by the secured
16  party and a former employee.  There was no evidence that the sale was publicized in
17  any manner, and the secured party purchased the collateral for $100 at the sale and
18  re-sold the collateral to a third party for $10,000.  Despite these facts, the Court
19  reversed the district court's judgment setting aside the sale and held that it was
20  enough that the secured party's judgment be reduced by the fair market value of the
21  collateral.

22      In the present case, on the other hand, the HOA complied with every
23  requirement of NRS Chapter 116 to hold a public auction at which a third party (i.e.
24  plaintiff) purchased the property for the high bid of $10,100.00.

25      NRS 104.9109(4)(k) also states that Article 9 of the Uniform Commercial Code
26  does not apply to "[t]he creation or transfer of an interest in or lien on real property"
27  except for four specific situations.  An HOA lien created and foreclosed under NRS
28  Chapter 116 is not one of the four situations.

33

# VII. CONCLUSION

By reason of the foregoing, plaintiff respectfully submits that this Court should reverse the order by the district court granting defendant's motion for summary judgment.

DATED this 29th day of July, 2015.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By: / s / Michael F. Bohn, Esq. /
Michael F. Bohn, Esq.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Attorney for plaintiff/appellant

# VIII. CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 12,368 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect X6 14 point Times New Roman.

DATED this 29th day of July, 2015.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By: / s / Michael F. Bohn, Esq. /
Michael F. Bohn, Esq.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Attorney for plaintiff/appellant

## IX. <u>STATEMENT OF RELATED CASES</u>

To the best of plaintiff/appellee's knowledge and information, there are no known related cases pending in this court.

DATED this 29th day of July, 2015.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By:  / s / Michael F. Bohn, Esq. /
Michael F. Bohn, Esq.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Attorney for plaintiff/appellant

## X. <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am an employee of The Law Offices of Michael F. Bohn, Esq., Ltd., and that I electronically filed the foregoing APPELLANT'S OPENING BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on July 29, 2015.


 /s/ Marc Sameroff/
An Employee of the LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.